214-08/MEU/SL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VARDHMAN SHIPPING PVT LTD,

                                                                                                     **08 CV 3620 (RMB)**

-against-


HERNING SHIPPING AS,

                            Defendant.
------------------------------------------------------------------x


**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW**
**IN FURTHER OPPOSITION TO MOTION TO VACATE ATTACHMENT**


                                                        FREEHILL HOGAN & MAHAR, LLP
                                                        Attorneys for Plaintiff
                                                        VARDHMAN SHIPPING PVT LTD.
                                                        80 Pine Street
                                                        New York, NY  10005
                                                        (212) 425-1900
                                                        (212) 425-1901 fax


<u>Of Counsel</u>
Michael E. Unger (MU 0045)


NYDOCS1/306202.1

**PRELIMINARY STATEMENT**

This Memorandum of Law, together with the supporting Sur-Reply Declaration of John Hicks, is narrowly tailored and respectfully submitted as VARDHMAN's Sur-Reply to the Reply submitted by HERNING in order to address the unsupported, conclusory statements contained in the Declaration of Nicholas Wilson, the English solicitor representing Defendant in the underlying London arbitration, which are only raised for the first time in HERNING's Reply to VARDHMAN's opposition to the motion for counter-security.

**ARGUMENT**

**POINT I**

**A SUR-REPLY IS APPROPRIATE WHERE
THE REPLY MEMORANDUM RAISES NEW ISSUES**

The law of this Circuit generally permits sur-reply papers to be served by the non-moving party in response to new argument, evidence or case law introduced in the moving party's reply papers. "Where new evidence is presented in a party's reply brief or affidavit...the district court should permit the nonmoving party to respond to the new matters prior to the disposition of the motion." Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 945 F. Supp. 693, 708 (S.D.N.Y. 1996) (quoting Litton Indus. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992)). A sur-reply should therefore be permitted when the moving

party attempts to "spring upon [the opposing party] new reasons for" granting the relief requested in the motion. Id.

New York courts similarly routinely allow submission of sur-reply papers when reply papers raise new issues of law or fact requiring a response, and have held that courts should not consider new arguments introduced in reply papers unless an opportunity to respond to those arguments is granted. Scherrer v. Time Equities, Inc., 218 A.D.2d 116, 120-121, 634 N.Y.S.2d 680, 682 (1st Dept. 1995) (holding that "[a]rguments advanced for the first time in defendants' reply papers are entitled to no consideration by a court entertaining [the] motion"). New York's Court of Appeals has emphasized the importance of granting the non-moving party an opportunity to submit rejoinder papers to "obviate[e] any danger of prejudice." Held v. Kaufman, 91 N.Y.2d 425, 430, 694 N.E.2d 430, 432, 671 N.Y.S.2d 429, 431 (1998). *See also* ARC Municipal Securities Corp. v. Kleinberg, Kaplan, Wolff & Cohen, 171 A.D.2d 441, 443, 567 N.Y.S.2d 26, 27 (1st Dept. 1991) (an opportunity to submit sur-reply papers avoids prejudicial surprise). *See also* Bongiovanni v. Staten Island Medical Group, P.C., 188 Misc.2d 362, 363, 728 N.Y.S.2d 345, 346 (New York 2001) (granting plaintiff an opportunity to submit a sur-reply memorandum of law in response to new case citations submitted in defendant's reply memorandum).

In support of its motion for counter-security, HERNING submitted only the Declaration of its New York counsel which set forth numerous allegations concerning the four counterclaims for which HERNING seeks counter-security.[1] In the face of the Declaration of VARDHMAN's Managing Director, Saurin Shah, which explains why the

---

[1] HERNING has withdrawn the request for counter-security for the alleged unpaid cost of bunkers consumed while the vessel was off-hire as HERNING has recognized that VARDHMAN is indeed correct that that counterclaim was frivolous since VARDHMAN had paid for the bunkers which were consumed.

NYDOCS1/306202.1         2

remaining three counterclaims are frivolous on the facts, and the Declaration of VARDHMAN's English solicitor, John Hicks, who explains why those counterclaims are frivolous as a matter of English law, HERNING for the first time in reply submits the Declaration of its English solicitor, Nicholas Wilson. Mr. Wilson's statements, purportedly rebutting the evidence given by VARDHMAN's witnesses, are anything but a rebuttal. Rather "evidence" provided by Mr. Wilson should have been submitted at the time of the filing of HERNING's motion initially, not in a reply in an effort to "sandbag" the Plaintiff by trying to get in the last word. Where the statements of Mr. Wilson could and should have been submitted with HERNING's initial motion papers, it is only fair to allow VARDHMAN the right of a sur-reply to respond to the new purported "evidence" submitted by Mr. Wilson.

The scope of this sur-reply extends only to the misrepresentations and new factual arguments recently submitted in HERNING's Reply. For the reasons set forth herein, and for those established in Plaintiff's responsive papers, Defendant's motion for counter-security should be denied.

## POINT II

### NOTWITHSTANDING THE CONTENTIONS OF ITS SOLICITOR, HERNING'S COUNTERCLAIMS ARE STILL FRIVOLOUS

Addressing the three remaining counterclaims advanced by HERNING, it is clear that the Wilson Declaration does not support a finding that they are not frivolous. As explained by Mr. Hicks in his further Declaration, the statements made by Mr. Wilson are

unsupported by the admissible evidence and incorrect and disingenuous as a matter of law.

A.  **Counterclaim For Unpaid Hire**

As previously discussed, Clause 65 of the Charterparty required HERNING to obtain the approval of seven oil majors within six (6) months of delivery of the vessel. In an effort to get around the fact that VARDHMAN was within its rights to place the vessel off-hire if the approvals were not obtained, Mr. Wilson, at ¶ 5 of his Declaration, suggests that the oil major approvals were not obtained because either the vessel was not traded by VARDHMAN to areas where the oil majors could inspect or the oil majors had no commercial interest in inspecting the vessel so as to excuse HERNING's breaches of warranty. Initially, it is noted that like the vast majority of the statements made by Mr. Wilson, these claims are not based upon first hand knowledge or are simply conjecture on his part and unsupported by any admissible evidence of any kind.

As set out in the further Declaration of Mr. Hicks, and the Lloyd's MIU report concerning the vessel's trading history, the M/T KRISTINA THERESA did, in fact, trade to the United States, Rotterdam and Canada where oil major inspections regularly and routinely take place. (Hicks Further Declaration ¶3) Further, the Wilson contention that the oil majors had no interest in the vessel is merely an invention on his part and is wholly unsupported by any admissible evidence. HERNING's "proof", which consists of nothing but the "say so" of its counsel who has no firsthand knowledge as to the operational dealings of this vessel, is insufficient to justify an award of counter-security

for this frivolous claim. As such, there can be no legitimate dispute that the vessel was properly placed off-hire as a result of HERNING's breach of the vetting clause.

Even putting aside Mr. Wilson's obfuscations and effort to take advantage of the exception in the Vetting Clause so as to excuse its breach, there is no doubt that HERNING has no viable counterclaim for breach of the charter on the part of VARDHMAN for placing the vessel off-hire.[2] Most significantly in this respect, it is an undisputed fact that Exxon withdrew its approval of the vessel due to the Master's alcohol infringement. Accordingly, under no circumstance could or did HERNING satisfy its obligation under the vetting clause, Clause 65, to **obtain and maintain** the approval of all seven oil majors. As Mr. Hicks explains, the vetting clause was breached by virtue of the withdrawal of the Exxon approval and Mr. Wilson has not sought to take issue with this. (Further Hicks Declaration ¶8) Accordingly, as a matter of English law the vessel was properly placed off-hire by VARDHMAN and HERNING's claim for unpaid hire is unsupported factually and unsupportable as a matter of English law.

**B.    Lost Profits**

Mr. Wilson claims in his Declaration that had the vessel been put back on the market it could have only been fixed at a level where HERNING would necessarily have suffered lost profits equal to the $1,893 per day differential claimed in HERNING's counterclaim. (Hicks Further Declaration ¶ 6) Notably, no evidence is put forth by HERNING in support of this assertion. The very fact that Head Owner Shulte withdrew

---

[2] All three of HERNING's counterclaims are premised on the unsupported and unsupportable assumption that VARDHMAN's placement of the vessel off-hire was improper.

the vessel under the Head Charterparty with HERNING suggests that Shulte expected to be able to re-employ the vessel more profitably elsewhere.

Of course this all assumes that these damages flow from the decision by VARDHMAN to place the vessel off-hire where, as previously explained, VARDHMAN was within its full rights to do so and as such, there has been no breach by VARDHMAN.

C.  **Repositioning Costs**

Mr. Wilson further contends that notwithstanding the fact that the vessel remains off the coast of West Africa, VARDHMAN was obliged to redeliver her at Gibraltar. Mr. Wilson, however, overlooks the fact that VARDHMAN only placed the vessel off-hire (as was its right) and did not seek to cancel the charter. Rather, it was HERNING which repudiated the Charterparty after Head Owner Shulte had withdrawn the vessel from HERNING's service due to HERNING's failure to pay hire in breach of the Head Charterparty. As explained by Mr. Hicks, since HERNING did not own the vessel and VARDHMAN did not wrongly place the vessel off-hire, there is no right, as a matter of English law, for HERNING to seek to recover the repositioning cost damages. Moreover, the claim for repositioning costs would, in reality, initiate from Head Owners who would naturally seek such costs from HERNING due to HERNING's breach of the Head Charterparty. However, HERNING may never have to pay those costs to Shulte since Shulte has apparently not (and may never) put forward any claim to recover them from HERNING. (Hicks Further Declaration ¶ 7)

## CONCLUSION

As set forth above, each of the remaining counterclaims advanced by HERNING are factually and legally unsupported and unsupportable and no counter-security should be required by VARDHMAN in respect of same. Accordingly, the motion for counter-security should be denied.

Dated: New York, New York
       June 9, 2008

                                  Respectfully submitted,

                                  FREEHILL HOGAN & MAHAR, LLP
                                  Attorneys for Plaintiff
                                  VARDHMAN SHIPPING PVT LTD.

By: _____
     Michael E. Unger (MU 0045)
     80 Pine Street
     New York, NY 10005
     (212) 425-1900 / (212) 425-1901 (fax)