214-08/MEU/SL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VARDHMAN SHIPPING PVT LTD.,

                Plaintiff,

- against -

HERNING SHIPPING AS,

                Defendant.
------------------------------------------------------------------x

**08 CV 3620 (RMB)**

**DECLARATION OF SAURIN SHAH**

I, SAURIN SHAH, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

I am the Managing Director of Plaintiff VARDHMAN SHIPPING PVT LTD. ("VARDHMAN").

1. I am the same Saurin Shah who submitted a Declaration dated May 30, 2008 in opposition to the motion of Defendant HERNING SHIPPING AS ("HERNING") requesting an order for the posting of counter-security.

2. I submit this Declaration in support of VARDHMAN's motion for reconsideration of this Honorable Court's Order of June 10, 2008 which directed VARDHMAN to post counter-security in favor of HERNING.

3. As previously advised, pursuant to a Charterparty dated November 15, 2006, VARDHMAN agreed to charter the M/T KRISTINA THERESA from HERNING, the vessel's disponent owner at the rate of $14,683 per day.

4. HERNING have averred that they previously chartered the vessel from her Head Owners, non-party MS "PAUL SCHULTE" Shiffahrtsgesellschaft mbH & Co. KG

NYDOCS1/307287.1

("Schulte" or "Head Owners") pursuant to a Charterparty dated February 10, 2006 at the rate of $12,790 per day.

5. As part of its counter-claim HERNING sought counter-security in the sum of $439,176 representing the $1,893 per day difference in the hire rates times the 232 days representing the maximum number of days remaining on the charter between HERNING and VARDHMAN, despite the fact that the vessel had been withdrawn from HERNING's service on April 9, 2008 by Schulte due to HERNING's failure to pay hire.

6. There is absolutely no basis for HERNING's claim because it had no ship to charter to anyone for any sum.

7. When Schulte retook possession, the vessel was located off the coast of Cotonou, West Africa.

8. Nonetheless, HERNING also sought counter-security for the claimed $214,137 cost of repositioning the ship to Gibraltar where HERNING alleged it was required to redeliver the ship to Schulte but which cost it had not incurred.

9. I have subsequently come to learn that on or about May 25, 2008 Schulte chartered the vessel to a company called Gateway at the rate of $13,200 per day.

10. Had HERNING continued to pay hire to Schulte under the head charter HERNING could have relet the ship to another charterer at a rate greater than what VARDHMAN was paying to HERNING as the market had increased by about 10%.

11. Thus, there would have been no loss and HERNING, in fact, would have earned a profit of greater than $1,893 per day had it kept the ship.

3

12. The above makes clear that HERNING's claim at page 9 of its Reply Memorandum of Law that had it continued to pay hire to Schulte and traded the vessel for its own account it would have sustained a loss is untrue.

13. I have also learned that Schulte delivered the vessel to Gateway off West Africa.

14. Accordingly, it is clear that HERNING has not actually incurred any costs for re-delivery of the vessel from Cotonou to Gibraltar as claimed in their counterclaim, and HERNING does not face a claim by Schulte for the cost of repositioning the ship because the ship has been delivered to Gateway from Cotonou.

15. Counter-security should thus not be required for the repositioning claim.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed at Gujarat, India
on June 24, 2008.

_____
SAURIN SHAH